Thomas Rackley TACKETT *v.* McDONALD'S CORPORATION and McDonald's of Russellville, Inc.

CA 99-143                                    3 S.W.3d 340

Court of Appeals of Arkansas
Division I
Opinion delivered November 3, 1999

*The Dennis C. Sutterfield Law Firm, P.A.*, by: *Dennis C. Sutterfield*, for appellant.

*Laws & Murdoch, P.A.*, by: *Hugh R. Laws* and *Ike Allen Laws, Jr.* and *Latham & Watkins*, by: *David S. Foster* and *Kevin C. May*, for appellees.

TERRY CRABTREE, Judge. In a complaint filed in the Pope County Circuit Court, the appellant alleged that on April 11, 1998, he purchased food at McDonald's restaurant in Russellville, Arkansas, and that the restaurant was participating in a national promotion referred to as the "Monopoly Game." He asserted that a monopoly game piece was attached to his food purchase that denoted "$200,000 Dream Home Cash" and "Instant." In addition, appellant claims that he properly submitted the form for redemption of the game piece; that McDonald's refused to honor the game piece and as a result breached the contract between McDonald's and the appellant, entitling the appellant to judgment in the amount of $200,000, plus interest, attorney fees, and costs.

Count II of appellant's complaint involved a game piece for a "Chevy Blazer and Sea Doo Watercraft" that had "Instant Winner" printed on it and was received on the same day as the game piece in count one. The appellant submitted the proper form for redemption of the Chevy Blazer and Sea Doo, but McDonald's refused to honor the game piece. The appellant asserted that he was entitled to judgment in the amount of $35,820.00 plus interest, attorney fees, and costs.

In Counts III and IV of appellant's complaint, he alleged that he had an ownership interest in the $200,000 cash prize, as printed on the first game piece referred to in Count I, and a $35,820 ownership interest in the Chevy Blazer and Sea Doo, as printed on the second game piece, of which the appellee had a duty to deliver to the appellant. The appellant asked for damages in the amount of $200,000 plus punitive damages in the amount of $5,000,000 in Count III and $35,820 plus punitive damages in the amount of $5,000,000 in Count IV.

In a motion to dismiss, the appellees moved the court to dismiss the conversion claims in Count III and IV, and filed an answer in regards to Counts I and II. On September 21, 1998, the appellees moved for summary judgment on Counts I and II with affidavits and exhibits. The appellant filed a response to the motion

for summary judgment on September 30, 1998, followed by a reply brief filed by appellant on October 12, 1998.

By an order dated September 30, 1998, and filed of record October 9, 1998, the trial court granted appellees' motion to dismiss the conversion claims in Counts III and IV, without a hearing. On November 9, 1998, the trial court granted the appellees' motion for summary judgment and dismissed the remaining counts in the complaint. From the order dismissing Counts III and IV, and the order granting appellees' motion for summary judgment on Counts I and II and dismissing the appellant's complaint, appellant brings this appeal.

■ Summary judgment is properly granted by the trial court when it is clear that there is no genuine issue of material fact to be tried. *Tyson Foods, Inc. v. Adams*, 326 Ark. 300, 930 S.W.2d 374 (1996). We view pleadings, affidavits, documents, and exhibits filed in support of a motion for summary judgment in the light most favorable to the party against whom the motion is filed. *Raynor v. Kyser*, 338 Ark. 366, 993 S.W.2d 913 (1999).

■ In his first issue, the appellant argues that the trial court erred in granting the appellees' motion for summary judgment in two respects. First, he argues that the court erred by granting the motion without conducting a hearing. Rule 56(c) of Ark. R. Civ. P. states:

> (c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party, prior to the date of the hearing, may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

The appellant cites us to *Campbell v. Bard*, 315 Ark. 366, 868 S.W.2d 62 (1983), for authority that a hearing is required before an order is issued on a summary judgment motion. The *Campbell* case certainly states that the rule contemplates that a hearing will be held before an order is entered ruling on a motion for summary judg-

ment. However, the appellate court will not reverse the trial court's order granting a motion for summary judgment if the appellant fails to demonstrate prejudice. After reviewing the pleadings, documents, affidavits, and exhibits in this case, we are convinced that the appellant was not prejudiced by the trial court's order granting summary judgment.

■ The appellant forcefully asserts that had the court set the motion for hearing, he could have produced affidavits in opposition to those submitted by the appellees before the hearing. As the appellees point out, there was a substantial period of time between the filing of the appellees' reply brief and the court's order granting the summary judgment. Appellant had sufficient time to file additional affidavits. Further, the appellant does not provide specifics as to who would submit the affidavits and the specific information that would be contained in the affidavits. We simply do not believe the appellant has demonstrated prejudice.

■ Second, the appellant asserts that it was error for the trial court to grant the motion for summary judgment without affording the appellant the opportunity to complete discovery. Admittedly, the better practice is to afford the parties time to complete discovery and schedule the motion for a hearing, but, in the absence of a hearing, the court must rule on the pleadings, documents, exhibits, and affidavits before it at the time, and need not wait for completion of discovery to consider the motion for summary judgment.

■ The appellant also argues the award of summary judgment in this case was in error because a genuine issue of material fact remained. The appellant asserts that the game rules are ambiguous and therefore should be construed against the party who drafted them, *Ford Motor Credit Company v. Twin City Bank*, 320 Ark. 231, 895 S.W.2d 545 (1995), and because the game rules are ambiguous, a genuine issue of material fact exists as to their interpretation and application. In the first instance, the court determines whether or not a contract is ambiguous; if the trial court finds that the contract is not ambiguous, its construction is a matter of law. *Kanning v. Allstate Insurance Co.*, 67 Ark. App. 135, 992 S.W.2d 831 (1999). In *Kanning*, we stated, "A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction." The game rules in this case stated:

7. VERIFICATION: All game materials are subject to verification at a participating McDonald's or the Redemption Center, whichever is applicable. Game materials are null and void and will be rejected if not obtained through authorized, legitimate channels, or if they are from other games, and may be rejected if any part is counterfeited, illegible, mutilated, or tampered with in any way (except for the signed initials of the potential winner), or if they contain printing, typographical, mechanical, or other errors. All decisions of McDonald's and the Redemption Center are final, binding, and conclusive in all matters.

The game rules clearly state that game pieces are void if they contain errors. The trial court found the language unambiguous, and we agree with its analysis. Further, the language is susceptible to only one reasonable construction; if a game piece contains an error, it is void. The trial court reasonably concluded that the logical effect of the language of the game rules was to make the games pieces void. Consequently, the trial court did not err in granting summary judgment to appellees on Counts I and II.

■ For the second point, the appellant asserts that the trial court erroneously dismissed the conversion claims (Counts III and IV) of his complaint. The trial court did not err. In *Grayson v. Bank of Little Rock*, 334 Ark. 180, 188, 971 S.W.2d 788, 792 (1998), the supreme court set out the elements of conversion as follows:

Conversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession. Conversion can only result from conduct intended to affect property. The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights.

■ Count III of the appellant's complaint alleged that the appellees exercised dominion over his ownership interest in the $200,000 cash prize which was created instantly when he submitted the winning game piece for redemption. Clearly, an ownership interest was not created until his game piece was validated as the winning game piece. Even then, the appellees would have a reasonable time to produce the money. The same logic applies to Count IV. The appellant simply had no ownership interest in the Blazer or Sea Doo.

Affirmed.

ROBBINS, C.J., agrees, and BIRD, J., concurs.