Melba LAIRD *v.* Sandra SHELNUTT

CA 01-207 55 S.W.3d 795

Court of Appeals of Arkansas
Division IV
Opinion delivered October 3, 2001
[Petition for rehearing denied November 7, 2001.]

*Hatfield & Lassiter*, by: *Richard F. Hatfield*, for appellant.

*Baxter, Jensen, Young & Houston*, by: *Ray Baxter*, for appellee.

OLLY NEAL, Judge. This is an appeal from the Saline County Chancery Court's order granting appellee's motion for summary judgment. On appeal, the appellant argues the court erred in granting summary judgment because its decision was not based upon the record as required by Arkansas law, but upon a trial in probate court, which is not a part of this record; and because the record reflects genuine issues of material fact. In the alternative appellant argues that even if the trial court did not err in granting appellee's motion for summary judgment in finding a constructive trust, its finding that $738,000 was the proper amount of damages is clearly erroneous. We affirm.

Appellant, Melba Laird is Don McMann's sister. Appellee, Sandra Shelnutt is his stepdaughter from his marriage to Dixie McMann. On June 23, 1995, Don McMann and his wife Dixie executed reciprocal wills that were prepared by John Lovell, a Benton attorney. Their wills appointed Sandra Shelnutt executrix. After the death of the survivor, the residue of their estate was left to Sandra Shelnutt. The wills contained a clause stating "they agreed that neither would alter, amend, or change their wills or do any act or suffer any omission which would defeat the testamentary plan outlined in their wills 'except by mutual agreement at the time when both of us are alive.' "

On January 29, 1998, $900,000 in funds from an investment account in the name of Don McMann, his wife, Dixie, and Sandra Shelnutt as joint tenants with rights of survivorship, were evenly split as between Sandra Shelnutt and Don McMann. Dixie McMann died February 2, 1998, and following her death, Don added appellant to his account as a joint tenant with right of survivorship. Don also executed a new will on July 14, 1998, naming appellant as his executrix and heir.

Don died June 5, 1999, and appellee was appointed executrix of his estate pursuant to the June 23, 1995, will. Appellant contested the will and sought to probate the 1998 will; however the probate court gave effect to the 1995 will. Appellant appealed arguing the probate court lacked subject-matter jurisdiction to enforce the will contract. We recently held in an unpublished opinion, that the probate court lacked subject-matter jurisdiction to enforce the contract and reversed and remanded the case. *Laird v. Shelnutt*, CA 00-1226 (Ark. App., Sept. 5, 2001).

Appellee brought an action to impose a constructive trust against the property that was once in the joint account held by Don

and appellant, which can be traced to two separate trusts, the Melba Laird Trust and the Max Laird Trust. Appellee argued that Don and Dixie had an agreement that Don would leave property to be transferred by will. Appellee moved for summary judgment, alleging all questions of fact were resolved in probate court. Appellee supported her motion with the transcript of the probate court proceeding. The chancery court issued an order granting appellee's motion for summary judgment, ordering a constructive trust to be placed on a $738,000 investment account owned by appellant.

 A trial court's grant of summary judgment is proper when it is clear there are no issues of material fact to be tried. *Tackett v. McDonald's Corp.*, 68 Ark. App. 41, 3 S.W.3d 340 (1999). Once the moving party makes a *prima facie* showing of entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001) (quoting *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000)). On appellate review, we determine if the grant of summary judgment was proper based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Holytrent Prop. v. Valley Park Ltd.*, 71 Ark. App. 336, 32 S.W.3d 27 (2000). We view pleadings, affidavits, documents, and exhibits filed in support of a motion for summary judgment in the light most favorable to the nonmoving party. *Tackett v. McDonald's Corp., supra.* After reviewing the undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Plant v. Wilbur, supra,* (quoting *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000)).

Appellant argues the trial court erred in granting summary judgment because its decision was not based upon the record required by Arkansas law, but on a trial in probate court, which is not part of the record and because the record reflects genuine issues of fact. We must point out that appellant failed to abstract the disputed transcript, and appellee corrected the deficiency in her brief. We hold that the probate transcripts were a part of the record because the trial court stated in its order that it relied on the transcripts from the probate proceeding in rendering its decision and because the probate transcripts are part of the certified record filed with our clerk's office.

■ Matters to be considered in summary-judgment proceedings include affidavits, depositions, admissions, and answers to interrogatories. *UMLIC 2 Funding Corp. v. Butcher*, 333 Ark. 442, 970 S.W.2d 211 (1998). We have not addressed the issue of whether a transcript may be used to support a motion for summary judgment. The Maryland Court of Appeals has stated that a transcript of former testimony possesses the same indicia of reliability as an affidavit in the summary-judgment context. *Imbraguglio v. Great Atlantic & Pacific Tea*, 747 A.2d 662 (Md. 1999). The Maryland Court reasoned that a transcript indicates matters the witness would testify to if called in the present case, and like an affiant, the witness gave the former testimony under oath. *See id.* The Maryland Court did note that other courts have decided a transcript of former testimony may not be considered by the trial judge when ruling on a motion for summary judgment. *See id.; Copeland v. Samford Univ.*, 686 So.2d 190 (Ala. 1996); *Gatton v. A.P. Green Servs. Inc.*, 64 Cal.App.4th 688 (1998). However, the Court found those cases distinguishable because the transcript testimony was being offered against a plaintiff or defendant who was not a party to the previous case. *See Imbraguglio*, 747 A.2d at 670. The Maryland Court held that in regard to summary judgment, a court may consider transcript testimony from a prior proceeding involving the same parties. *See id.*

■■ Affidavits submitted in support of, or opposing, summary judgment are never subject to cross-examination. *Farmers Union Oil Company of Williston v. Harp*, 462 N.W.2d 152 (1990). A transcript is superior to an affidavit in that it is subject to cross-examination and conducted under the supervision of a trial judge. We hold that the transcript in the present case possesses all the indica of reliability and that a court may consider a transcript in summary judgment proceedings.

■■ It was proper for the trial court to rely on the transcripts in rendering its decision to grant summary judgment. After reviewing the pleadings, affidavits, documents and exhibits filed in support of the motion for summary judgment in a light favorable to appellant, we hold there were no issues of material fact to litigate; therefore, the trial court's grant of summary judgment was proper.

■ Appellant argues, in the alternative, that even if the trial court did not err in granting appellee's motion for summary judgment in finding a constructive trust, its finding that $738,000 is the proper amount of damages is clearly erroneous. Appellee presented the testimony of Martin Northern, a stock broker and registered

investment advisor. He testified that he was able to trace $493,249.18 originally in Don McMann's account to trust accounts in the names of appellant and her husband. He also testified that appellant never contributed to the accounts. Northern further testified that the accounts contained $737,791.96 that formerly belonged to Don McMann. Appellant challenges this calculation; however, she failed to offer any proof that this calculation was in error. We hold that the trial court's valuation of the trust at $738,000 was proper.

█ Appellant failed to abstract the probate transcript. Appellee's attorney filed a motion for attorney's fees because he corrected the deficiency. We believe he is entitled to attorney's fees in the amount of $1,500.

Accordingly, we affirm.

PITTMAN and VAUGHT, JJ., agree.