DUKE WHOLESALE, INC. *v.* Sharon L. PITCHFORD
and Compass Bank

CA 01–64 56 S.W.3d 399

Court of Appeals of Arkansas
Division IV
Opinion delivered October 10, 2001

*Eichenbaum, Liles & Hester, P.A.*, by: *James H. Penick, III*, for appellant.

*Mildred H. Hansen*, for appellee Sharon L. Pitchford.

*Horne, Hollingsworth & Parker*, by: *Bradley S. Chafin*, for appellee Compass Bank.

OLLY NEAL, Judge. Appellant, Duke Wholesale, Inc. (Duke), appeals from an award of summary judgment to appellees, Sharon Pitchford and Compass Bank, by the Saline County Chancery Court. Appellees filed suit seeking a declaratory judgment, arguing that title to a 1995 Chevrolet Camaro was in Pitchford's name and that Duke be required to release the certificate of title to Pitchford and Compass Bank. In their motion for summary judgment, appellees argued that Pitchford was a buyer in the ordinary course of business and as such, under Ark. Code Ann. § 4-9-307(a) (Repl. 1991), she took the car free of Duke's security interest and that Compass Bank received the benefit of Pitchford's

protection under Ark. Code Ann. § 4-9-307(a). They also argued that Duke retained only a security interest in the proceeds from the sale of the car, but not the car itself. In his order granting summary judgment, the chancellor found there were no genuine issues of material fact and awarded Pitchford and Compass Bank attorneys' fees and cost. We affirm the chancellor's grant of summary judgment and reverse the award of attorneys' fees and costs.

Appellant, Duke, is an automobile wholesaler. Compass Bank is an Alabama corporation and financier of automobiles. Duke sold and delivered a 1995 Chevrolet Camaro to Mike Woodall Auto Sales, Inc. d/b/a Mike Woodall Subaru (Woodall). In lieu of payment, Duke retained the certificate of title to the Camaro as security for payment of the purchase price of the car. In January of 1998, Woodall sold the Camaro to Pitchford for $11,900. Pitchford gave Woodall a $1,500 down payment and financed the remainder of the purchase price under a retail installment and security agreement that Woodall assigned to Compass Bank. In exchange for the contract and security agreement, Compass Bank paid Woodall the remainder of the purchase price. Woodall failed to pay Duke for the car and has since closed. On January 20, 1999, Compass requested that Duke release the certificate of title to Compass and Pitchford. Duke refused to relinquish title, alleging it had an interest superior to Compass Bank's interest.

On March 30, 1999, appellees Compass Bank and Pitchford filed a complaint for declaratory judgement seeking a declaration that: (i) Duke sold and delivered to Woodall, or otherwise entrusted Woodall with possession of the automobile, (ii) at all times Duke was a merchant dealing in used automobiles, (iii) at all time relevant, Woodall was a merchant who dealt with new and used automobiles, and (iv) pursuant to Ark. Code Ann. § 4-2-403 (Repl. 1991), Woodall had the power and authority to transfer and convey all Duke's right in the automobile to Pitchford. Pitchford and Compass Bank also sought a declaration that: (i) Duke was a merchant, (ii) Woodall was a merchant, (iii) Pitchford purchased the automobile from Woodall as a buyer in ordinary course, pursuant to Ark. Code Ann. § 4-1-201(9) (Repl. 1991), and (iv) that pursuant to Ark. Code Ann. § 4-9-307(1), Pitchford took the automobile free of any lien or interest created in favor of Duke by Woodall.

Appellees filed a motion for summary judgment on July 13, 1999. They asserted Pitchford was a buyer in the ordinary course of business, who took the Camaro free of Duke's security interest and that Compass Bank was protected due to her protected status. They

supported their motion with the affidavits of Lynn Boyles, Compass Bank's Vice President, and Pitchford. Appellees also submitted the retail–installment contract and security agreement. Both Boyles and Pitchford stated they had no knowledge that the sale was in violation of Duke's security interest. Duke responded to the motion alleging there were genuine issues of material fact with respect to Compass Bank's rights. Duke questioned Compass Bank's relationship with Woodall. Duke alleged that Compass Bank did not provide Pitchford purchase money, but merely purchased Pitchford's loan from Woodall. Duke also counterclaimed for declaratory judgment, seeking that its lien be declared the first lien, that Compass Bank deliver all sums received under the installment sales contract, that their lien be recorded on the certificate of title, and that Duke be declared the owner of the retail–installment contract.

On November 15, 1999, Duke filed a supplemental response to the motion for summary judgment asserting (1) that Compass Bank and Woodall were closely connected and the close-connectedness doctrine prevented summary judgment in Compass Bank's favor, (2) that the doctrine prevents Compass Bank from recovery, and (3) that there are genuine issues of material fact concerning the close-connectedness doctrine. Duke supported its response with the affidavit of Patrick Campbell. Campbell stated he had been a sales manager at Woodall, and Compass Bank established the conditions for purchases based on the purchaser's credit rating, type of car, and interest rate to be paid. He also stated that the contract was a printed form prepared by Compass Bank.

In his order filed August 22, 2000, the chancellor found (1) no genuine issues of material fact, (2) that Duke delivered possession of the vehicle to Woodall and was an entrustor of the vehicle, (3) that Woodall was in the business of selling vehicles of that kind, (4) that Pitchford was a buyer in the ordinary course of business and (5) that she purchased the vehicle in good faith and without knowledge of Duke's interest. The chancellor found that upon purchase, title passed to Pitchford and that Compass Bank's rights were derived from Pitchford, not Woodall. The chancellor found the "close-connectedness" doctrine was inapplicable and had no relevance to the facts of the case. The chancellor awarded Compass Bank $2,500 in attorneys' fees and awarded Pitchford $1,000 in attorneys' fees.

 Summary judgment is appropriate when there is no genuine question of material fact to be litigated. *Watts v. St. Edward Mercy Med. Ctr.*, 74 Ark. App. 406, 49 S.W.3d 149 (2001). Once the

moving party makes a *prima facie* showing of entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001) (quoting *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000)). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Wright v. City of Monticello*, 345 Ark. 420, 47 S.W.3d 851 (2001). We view pleadings, affidavits, documents, and exhibits filed in support of a motion for summary judgment in the light most favorable to the nonmoving party. *Tackett v. McDonald's Corp.*, 68 Ark. App. 41, 3 S.W.3d 340 (1999). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Plant v. Wilbur, supra* (quoting *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000)).

On appeal, Duke questions whether there is a genuine issue of material fact, which would indicate that its equitable vendor's lien is superior to Compass Bank's lien on the retail-installment contract, created as a result of Woodall's "close-connectedness" to Compass Bank, thereby imputing Woodall's knowledge and conduct to Compass Bank. Duke relies on *Commercial Credit Co. v. Childs*, 199 Ark. 1073, 137 S.W.2d 260 (1940), to support its argument that Woodall and Compass Bank were closely-connected. We decline to follow the holding of *Commercial Credit Co. v. Childs, supra*, as it is a pre-code case.

██ ██ In order to resolve the conflict existing between the parties, we must proceed through a step-by-step analysis of each transaction using the current code. We begin with the transaction between Duke and Woodall. In the present case, Duke retained a security interest in the car it provided Woodall. Arkansas Code Annotated section 4-9-107(a) (Repl. 1991) provides that "a security interest is a 'purchase money security interest' (PMSI) to the extent that it is taken or retained by the seller of the collateral to secure all or part of its price." *See also Herringer v. Mercantile Bank*, 315 Ark. 218, 866 S.W.2d 390 (1993). The facts indicate that Duke retained the certificate of title as security for payment of the purchase price of the car; therefore, under the current code, Duke had a PMSI in the car. The car is a good. Arkansas Code Annotated section 4-9-109(4) (Repl. 1991) states that "goods are inventory if they are held by a person who holds them for sale or lease." Woodall was engaged in the business of selling cars; thus, Duke had a PMSI in inventory.

Furthermore, a PMSI in inventory has "priority over a conflicting security interest in the same inventory and also has priority in *identifiable cash proceeds . . . .*" Ark. Code Ann. § 4-9-312(3) (Repl. 1991) (emphasis added).

■■ We now move to the transaction between Woodall and Pitchford. A buyer in the ordinary course of business takes free of a security interest created by her seller even though the security interest is perfected and even though the buyer knows of its existence. *Merchant & Planters Bank v. Phoenix Hous. Sys.*, 21 Ark. App. 153, 729 S.W.2d 433 (1987); *see also* Ark. Code Ann. § 4-9-307 (Repl. 1991). A buyer in the ordinary course of business is defined as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in the ordinary course from a person in the business of selling goods of that kind." Ark. Code Ann. § 4-1-201(9) (Repl. 1991). The facts in this case indicate that Pitchford was a buyer in the ordinary course of business. She purchased the car in good faith and without notice of Duke's interest. As stated earlier, Woodall was engaged in the business of selling cars; therefore, Pitchford purchased the car from someone in the business of selling goods of that kind. As a buyer in the ordinary course, Pitchford was afforded the protection of Ark. Code Ann. § 4-9-307 and took free of Duke's security interest.

■ Pitchford gave Woodall a $1,500 down payment and Woodall financed the remainder of the purchase price using a retail-installment contract and security agreement. "A writing or writings which evidence both a monetary obligation and a security interest in . . . specific goods is considered chattel paper." *See* Ark. Code Ann. § 4-9-105(b) (Supp. 1999). The retail-installment contract and security agreement are chattel paper.

■ Our code provides that "a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds . . ." Ark. Code Ann. § 4-9-306(2) (Supp. 1999). Proceeds are defined as whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Ark. Code Ann. § 4-9-306(1) (Supp. 1999). The transaction between Woodall and Pitchford resulted in Duke having a security interest in the $1,500 down payment and the chattel paper.

■ ■ Upon completing the transaction with Pitchford, Woodall assigned the installment contract and security agreement to Compass Bank, in exchange for Compass Bank paying Woodall the remainder of the purchase price. The contract and security agreement were chattel paper. Ark. Code Ann. § 4-9-308 (Repl. 1991) provides:

> A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over security interest in the chattel paper or instrument:
>
> > (b) Which is claimed merely as proceeds of inventory subject to a security interest (§ 4-9-306) even though he knows that the specific paper or instrument is subject to the security interest.

New value arises where a secured party (1) makes an advance, (2) incurs an obligation, or (3) releases a perfected security interest. *Niedermeier v. Cent. Prod. Credit Ass'n*, 300 Ark. 116, 777 S.W.2d 210 (1989). The new value in the present case was the payment of the remainder of the purchase price. Compass Bank, engaged in the business of financing cars, took possession of the chattel paper in the ordinary course of its business. Therefore, under section 4-9-308 Compass Bank had priority over Duke's security interest.

■ The new value paid to Woodall by Compass Bank became a proceed of Duke's original security interest. Duke's PMSI attached to the funds received by Woodall. Compass Bank, as holder of the chattel paper, was entitled to the certificate of title.

■ We are of the opinion that there were no genuine issues of material fact. After careful review of the pleadings, affidavits, documents, and exhibits filed in support of the motion for summary judgment in a light most favorable to Duke, we hold that reasonable men could not reach a different conclusion from that of the chancellor. The grant of summary judgment by the chancellor was proper.

■ Duke makes an issue of the fact that it was not allowed to complete discovery. This issue is without merit. The facts reveal that Compass Bank and Pitchford filed their initial complaint for declaratory judgment on March 30, 1999. They filed their motion for summary judgment on July 13, 1999. Duke filed a counterclaim for declaratory judgment on November 15, 1999. The chancellor entered his order granting summary judgment on August 22, 2000.

Duke had over a year to initiate discovery; it simply failed to avail itself of the discovery process. We hold that Duke failed to do timely discovery; therefore, it waived discovery.

 Duke also challenges the award of attorneys' fees. Duke questions whether Ark. Code Ann. § 16-22-309 (Repl. 1999) applies, and if so, to what extent. Section 16-22-309(a)(1) (Repl. 1999) provides:

> In any civil action in which the court having jurisdiction finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney, the court shall award an attorney's fee in an amount not to exceed five thousand dollars ($5,000), or ten percent (10%) of the amount in controversy, whichever is less, to the prevailing party unless a voluntary dismissal is filed or the pleadings are amended as to any nonjusticiable issue within a reasonable time after the attorney or party filing the dismissal or the amended pleadings knew, or reasonably should have known, that he would not prevail.

To obtain an attorney's fee pursuant to section 16-22-309(a)(1), the prevailing party must show that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or his attorney. *Chlanda v. Killebrew*, 329 Ark. 39, 945 S.W.2d 940 (1997). Compass Bank has not shown a complete absence of a justiciable issue; therefore, we reverse the award of attorneys' fees and cost.

Affirmed in part, reversed in part.

PITTMAN and VAUGHT, JJ., agree.